IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENYATTA J. LATCHISON,

    Petitioner,               No. CIV S-07-0370 FCD CHS P

    vs.

T. FELKER, Warden,

    Respondent.           FINDINGS AND RECOMMENDATIONS

                              /

I.    INTRODUCTION

        Petitioner Kenyatta Latchison, a state prisoner proceeding with appointed counsel, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner attacks his conviction in the Solano County Superior Court, case number FCR194512, for murder and assault on a child causing death.

II.    CLAIMS

        Petitioner makes the following claims:

        A.     The prosecutor committed misconduct by shifting the burden of proof;

        B.     He received ineffective assistance of trial counsel; and

        C.     The prosecutor committed misconduct by disparaging defense counsel.

        Upon careful consideration of the record and the applicable law, the undersigned

1

will recommend that petitioner's petition for habeas corpus relief be denied.

III.     FACTUAL AND PROCEDURAL BACKGROUND

    A.     Facts[1]

> On October 1, 2001, two-year-old Aryanna H. died after being left in appellant's care. On January 23, 2002, in connection with her death, appellant was charged with murder (Pen.Code, § 187, subd. (a); Count 1) and with assault on a child causing death (Pen.Code, § 273ab; Count 2). Jury trial commenced on July 23, 2004.
>
> During trial, a factual dispute arose with regard to the cause of death. According to the prosecution, the victim died of blunt force head injuries inflicted by appellant. The defense countered by offering expert testimony that the victim died, not from any externally inflicted trauma, but from a rare illness known as "cortical venous thrombosis" (CVT).
>
> During rebuttal closing argument, the prosecutor argued as follows: "Finally, [defense counsel] gets to the point of his case.... And the point essentially is, 'Trust my expert, believe my expert....' Well, why don't we boil it down to the bottom line. His guy was bought. He was brought in the case and bought." Defense counsel's timely objection to this argument was overruled. The prosecutor continued by arguing that "[defense counsel] has to defend, somehow he has to try to defend the case or give you some option, otherwise we might as well not have the trial. He offered up CVT." Defense counsel did not object to this latter comment.

/////

Opinion at 1.

On August 3, 2004, the jury found petitioner guilty of both counts. Reporter's Transcript ("RT") at 402. The trial judge sentenced petitioner to a term of 25 years to life. Clerk's Transcript ("CT") at 241-243.

    B.     Post Trial Proceedings

        1)     State Appellate Review

Petitioner filed a timely appeal with the California Court of Appeal, First Appellate District that was denied on January 26, 2006. Opinion at 1-4. On March 3,

---

[1] This statement of facts is taken from the January 26, 2006, unpublished opinion by the California Court of Appeal for the First District (hereinafter Opinion), filed as Petitioner's Exhibit A. ("Petn's Ex. A")

2

2006, petitioner sought review from the California Supreme Court. Petn's Ex. B. That request was denied on April 12, 2006. Petn's Ex. C at 1.

    2) <u>State Habeas Review</u>

Petitioner filed a state habeas petition in the California Supreme Court on October 8, 2006. Petn's Ex. D at 1. The California Supreme Court denied that petition on April 25, 2007. Petn's Ex. E at 1.

    3) <u>Federal Habeas Review</u>

On April 18, 2007, petitioner filed his original federal petition for writ of habeas corpus. Counsel was appointed on May 24, 2007 and a stay was granted on February 28, 2008. On August 19, 2008, petitioner filed an amended petition and the stay was lifted on August 25, 2008. Respondent filed an answer on October 15, 2008 and petitioner filed a traverse on November 11, 2008.

## IV. <u>APPLICABLE STANDARD OF HABEAS CORPUS REVIEW</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Although "AEDPA does not require a federal habeas court to adopt any one methodology," <u>Lockyer v. Andrade</u>, 538 U.S 63, 71 (2003), there are certain principles which guide its application.

3

First, the "contrary to" and "unreasonable application" clauses are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

/////

Bell v. Cone, 535 U.S. 685, 694 (2002). It is the habeas petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360 (2002). It is appropriate to look to lower court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 2000).

Second, the court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). So long as the state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter how brief. Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000).

Third, in determining whether a state court decision is entitled to deference, it is not necessary for the state court to cite or even be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2003). Moreover, a state court opinion need not contain "a formulary statement" of federal law, so long as the fair import of its conclusion is consonant with federal law. Id.

/////

1  V.    DISCUSSION OF PETITIONER'S CLAIMS

       A.    Prosecutorial Misconduct[2]

              1)    Description of Claim

       During rebuttal argument the prosecutor stated, "[b]ut [defense counsel] has to defend, somehow he has to try to defend the case or give you some option, otherwise we might as well not have the trial. He offered up CVT." RT at 395. Petitioner argues this statement "improperly encouraged the jury to shift the burden of proof at trial onto the defense, negating the presumption of innocence." Memorandum in Support of Amended Petition ("Mem.") at 10.

              2)    State Court Opinion

       The California Court of Appeal rejected this claim stating:

> " 'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion-and on the same ground-the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety....' [Citation.]" (People v. Hill (1998) 17 Cal.4th 800, 820.) While courts have recognized limited exceptions to this rule, no such exception applies to the current case. By failing to object to this statement at the time of trial, appellant waived his right to argue the issue on appeal.

Opinion at 3-4.

              3)    Applicable Law

       A criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. Darden v. Wainwright, 477 U.S. 168, 181 (1986). However, such misconduct does not, per se, violate a petitioner's constitutional rights.

---

[2] In a short paragraph respondent asserts this claim is procedurally defaulted. See Answer at 13. The state bears the burden of proving an independent and adequate procedural default. Bennet v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003). Further, a reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim where the issue of procedural default turns on difficult questions of state law. Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004). Under the circumstances presented here petitioner's claim can be resolved more easily by addressing it on the merits. Accordingly, this report will assume that it is not procedurally defaulted.

Jeffries v. Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing Darden, 477 U.S. at 181, and Campbell v. Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)). Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted). See also Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Turner v Calderon, 281 F.3d 851, 868 (9th Cir. 2002). Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice. Johnson, 63 F.3d at 930 (citing Brecht, 507 U.S. at 637-38); see also Darden, 477 U.S. at 181-83; Turner, 281 F.3d at 868. Put another way, prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict. See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996). Finally, it is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard. See O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990).

In considering claims of prosecutorial misconduct involving allegations of improper argument the court is to examine the likely effect of the statements in the context in which they were made and determine whether the comments so infected the trial with unfairness as to render the resulting conviction a denial of due process. Turner, 281 F.3d at 868; Sandoval v. Calderon, 241 F.3d 765, 778 (9th Cir. 2001); see also Donnelly, 416 U.S. at 643; Darden, 477 U.S. at 181-83. Thus, in order to determine whether a prosecutor engaged in misconduct in closing argument, it is necessary to examine the entire proceedings to place the remarks in context. See United States v. Robinson, 485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must be examined in context. . . ."); Greer, 483 U.S. at 765-66; Williams v. Borg, 139 F.3d 737, 745 (9th Cir. 1998).

/////

/////

1           4) <u>Discussion</u>

The central issue in petitioner's trial was the differing medical opinions concerning the victim's cause of death. Petitioner's expert testified that the victim died of cortical venous thrombosis, a very rare condition not well recognized by medical professionals. <u>See</u> RT at 239, 251. Conversely, the medical examiner testified that the victim died as a result of blunt force trauma. RT at 92, 94.

Immediately after the argument at issue the prosecutor stated:

> Think about it, the law says with respect to evidence that if you have, if your evidence is capable of two interpretations, one of which is reasonable, and the other of which is not reasonable, you should draw the interpretation that is reasonable, reject the unreasonable interpretation.

RT at 395.

During closing arguments, prosecutors are allowed "reasonably wide latitude," <u>United States v. Birges</u>, 723 F.2d 666, 671-72 (9th Cir. 1984), and can freely argue "reasonable inferences from the evidence." <u>United States v. Gray</u>, 876 F.2d 1411, 1417 (9th Cir. 1995). <u>See also</u> <u>Ducket v. Godinez</u>, 67 F.3d 734, 742 (9th Cir. 1995). "[Prosecutors] may strike 'hard blows,' based upon the testimony and its inferences, although they may not, of course, employ argument which could be fairly characterized as foul or unfair." <u>United States v. Gorostiza</u>, 468 F.2d 915, 916 (9th Cir. 1972).

Placed in the context of the proceedings the argument was not alluding to the applicable burden of proof. The argument was instead a criticism of the reasonableness of petitioner's CVT defense. The prosecutor was essentially arguing that the defense was asserting CVT out of desperation. The prosecutor was not arguing that the defense had any burden of proof. Depicting petitioner's CVT defense as a function of desperation was not "foul or unfair" given the acknowledged rarity of the condition.

Further, the jury had already been instructed that petitioner was presumed innocent and that this "presumption [placed] upon the People the burden of proving him guilty

beyond a reasonable doubt." RT at 335. Given the evidence presented, the trial judge's instructions and the full context of the argument a rational juror would not interpret this argument as an invitation to shift the burden of proof onto petitioner.

Finally, petitioner argues that he was prejudiced because the "prosecutor relied on the argument and asserted that he had proved his case because, in essence, the defense had failed to affirmatively disprove it." Mem. at 18. Petitioner however has provided no evidence to support a claim of prejudice.

After examining the entire proceeding and placing the argument at issue in context, petitioner has failed to show that the remark was improper or resulted in actual prejudice. Petitioner is therefore not entitled to relief on this claim.

B.  Ineffective Assistance of Counsel

1) Description of Claim

Petitioner's trial counsel did not object when the prosecutor made the argument discussed above. Petitioner argues that there was "no conceivable tactical reason" to fail to object. Mem. at 22. He argues that without his counsel's error "it is reasonably probable [he] would not have been convicted" and he therefore received ineffective assistance of counsel. Id. at 24.

2) Applicable Law

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally,

8

competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003). In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

3) Discussion

The prosecutor's argument was not improper and did not constitute misconduct. Petitioner's counsel therefore was not deficient for failing to make an objection. Even if petitioner could show his counsel's performance was deficient he did not suffer any prejudice as a result.

Petitioner argues that if his counsel had objected the trial court might have admonished the jury to disregard the prosecutor's argument thereby ameliorating the alleged damage. Mem. at 23. There was however no actual damage from the argument and it is not likely that the jury's verdict would have been different but for the argument or counsel's failure to object.

The medical examiner's testimony gave a detailed account of the victim's various injuries, which he believed were consistent with blunt force trauma. RT at 77-95. He testified that the victim had bruises on both buttocks, her scalp and her face as well as swelling of her brain and bleeding in her skull. Id. at 80-92. It was his opinion that the victim died as a result of these injuries. Id.

The jury also heard testimony from the lead investigative detective who interviewed petitioner. He testified that petitioner's explanation for the victim's injuries was that they were due to a combination of some "excessive" discipline, the child falling while on a port-a-potty and possibly the child getting wedged upside down between a mattress and a bed rail. RT at 182-191.

The prosecution also called a second medical expert who testified in support of the medical examiner's opinion that the victim died of blunt force trauma. RT at 291. That witness described to the jury, among other things, how a small part of the victim's skull had separated due to swelling and how the victim's eyes showed evidence of hemorrhaging under microscopic evaluation. Id. at 292-294.

Presented with this evidence, as well as the opinion of petitioner's expert disputing the victim's cause of death, and all the other evidence offered at trial it is not likely that the jury's verdict would have been different but for the absence of one objection.

Based on the evidence presented at trial the prosecutor's argument was proper. Petitioner's counsel therefore was not deficient for failing to object. Additionally it is not reasonably likely that the jury's verdict would have been different but for the prosecutor's argument or counsel's failure to object. Petitioner therefore is not entitled to relief on this claim.

    C.    Prosecutorial Misconduct

        1)    Description of Claim

During his rebuttal argument the prosecutor stated:

Finally, [defense counsel] gets to the point of his case towards the

> end of his argument. And the point essentially is, 'Trust my expert, believe my expert.' And how he wants to go about the process is take his paper, take his CV, his paper, compare it to the other guy's paper. Well, why don't we boil it down to the bottom line. His guy was bought. He was brought in the case and bought. You go buy an opinion.

/////

RT at 393. Petitioner argues that the prosecutor attacked "the veracity and the integrity of [defense] counsel" in a manner that was "extremely prejudicial to petitioner." Mem. at 25.

### 2) State Court Opinion

The California Court of Appeal rejected this argument stating:

> Unlike arguments denigrating the character of counsel, attacks on the integrity of opposing witnesses are permissible. (People v. Arias (1996) 13 Cal.4th 92, 162.) Prosecutors may make "harsh and colorful" attacks on opposing witnesses' credibility. (Id. at p. 162.) "Thus, counsel is free to remind the jurors that a paid witness may accordingly be biased and is also allowed to argue, from the evidence, that a witness's testimony is unbelievable, unsound, or even a patent 'lie.' " (Ibid.)
>
> Stating that a witness has been "bought" is simply a "colorful" way of reminding the jurors that the witness has been paid and that the truthfulness of the expert's testimony may have been compromised as a result. The statement is thus a permissible attack on the credibility of the witness, and not an attack on the character of counsel. Consequently, there was no error in the trial court's overruling of defense counsel's objection.

/////

/////

Opinion at 3.

### 3) Applicable Law and Discussion

Disparagement of defense counsel by the prosecution is disapproved of. U.S. v. Frederick, 78 F.3d 1370, 1379 (9th Cir. 1996). It is not clear however that the prosecutor was disparaging defense counsel.

Petitioner argues that the claim "easily extrapolates to disparagement of the veracity and the integrity of trial counsel." Mem. at 25. The more simple interpretation is that counsel sought a favorable yet improbable medical opinion to defend his client. The argument

11

questions the validity of the opinion itself, but does not directly attack counsel's veracity or integrity.

With respect to any disparagement of the witness a prosecutor does not engage in misconduct when he labels a witness' testimony as lacking credibility or including lies or fabrication. See Turner v. Marshall, 63 F.3d 807, 818 (9th Cir. 1995), overruled on other grounds, Tolbert v. Page, 182 F.3d 677,685 (9th Cir. 1999) (en banc); see also United States v. Trevino, 419 F.3d 896, 902 (9th Cir. 2005). Further, where a case is essentially a determination of which of two conflicting stories is true, it may be reasonable to infer, and hence to argue, that one of the two sides is lying. U.S. v. Molina, 934 F.2d 1440, 1445 (9th Cir. 1991).

The prosecutor's argument at issue was a small and insignificant part of the trial. The comment did not rise to the level of misconduct and was not prejudicial. The cost of the defense expert was a topic of testimony, which the prosecutor drew upon to make a reasonable argument attacking the expert's credibility. See RT at 229. Petitioner has failed to show any misconduct or prejudice and is therefore not entitled to relief on this claim.

/////

/////

/////

## VI.    CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 14, 2009

*/s/ Charlene H. Sorrentino*
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE